NELSON BROWN'S EXR. *v.* J. C. DUNN'S EST.

January Term, 1903.

Present: START, WATSON, STAFFORD and HASELTON, JJ.

Opinion filed May 6, 1903.

*Executor—Contract—Validity—Contingent claim—*
*Variance.*

When the executor of an estate, the principal assets of which consist of a note which such executor is liable to pay, enters into a contract with his surety, by the terms of which such surety agrees to pay the interest on certain money received from such executor, as security for his liability, to the executor during the life of the testator's widow, and, at her decease, to pay the principal sum to the executor of the testator's estate, it is error, in the trial of an appeal from the disallowance of the claim by such executor for such principal sum by the commissioners of such surety's estate, to order a verdict for the defendant.

Such claim is absolute and provable, though the time of payment has not arrived.

That the time of payment is uncertain does not make a claim contingent within the meaning of V. S. 2517, when the time of payment is sure to arrive.

Since it does not appear that the question of a variance between the declaration and the evidence was raised in, and passed upon by, the Court below, or that such variance was material and substantial, affecting the right of the matter, it is not considered here.

APPEAL FROM COMMISSIONERS. Declaration in the common counts. Plea, the general issue. Trial by jury at the March Term, 1901, Rutland County, *Munson,* J., presiding. Judgment for defendant on verdict ordered. The plaintiff excepted.

*Joel C. Baker* for the plaintiff.

If the notes against A. C. Bates & Son were a part of Nelson Brown's estate it was the duty of this executor to collect them, and if, through his neglect, he fails to do so, his bondsmen would be liable. *Lyon* v. *Osgood,* 58 Vt. 707. The money paid to Mr. Dunn is held for the payment of the notes, and the claim against his estate is presented by the proper party.

If the notes belong to Nelson Brown's widow, the method of recovery would be the same, as the contract is to pay to Nelson Brown's executor.

It is no objection that the time of payment has not elapsed. The claim is not contingent, since the time of payment must occur sometime. The administrator of the Dunn estate can pay at the time specified in the contract. V. S. 2428.

*Lawrence & Lawrence, Butler & Moloney,* and *F. S. Platt* for the defendant.

The contract was in the name of A. C. Bates. There is no evidence that any of the money received by Dunn belonged to the estate of Nelson Brown. The evidence shows that the money was received on account of the Nancy Brown note, or as the money of A. C. Bates.

There was clearly a variance between the declaration and the testimony. The declaration should have been on the contract.

The claim is contingent and not one that can be allowed by commissioners.

START, J. This is an appeal from the decision of commissioners upon the estate of James C. Dunn. The contention is over the liability of Dunn's estate to Amos C. Bates, as executor of the estate of Nelson Brown, for money claimed to

have been paid to Dunn by Bates. At the close of the plaintiff's evidence, the Court ordered a verdict for the defendant. This was error. The evidence tended to show that Amos C. Bates was executor of the estate of Nelson Brown, and as such executor was required to give a new bond; that the personal assets of the estate principally consisted of promissory notes for the sum of forty-two hundred dollars, signed by A. C. Bates & Son, and payable to Nancy F. Brown, widow of Nelson Brown; that these notes were charged to Bates in his account as such executor; that Bates, as a member of the firm of Bates & Son, was holden for their payment; that the estate could not be settled until the decease of Mrs. Brown; that Bates asked Dunn and Joel C. Baker to become sureties upon his bond; that Baker told Dunn they ought not to sign a bond whereby they would, in effect, become sureties for the payment of A. C. Bates & Son's notes, which were then understood as belonging to, and to constitute the principal personal assets of the estate; that Dunn told Bates that he felt that the bondsmen ought to be secured; and that Bates thereupon made and submitted to Dunn, in writing, the following proposition: "In consideration of J. C. Dunn signing A. C. Bates' bond, with others, as executor of the estate of Nelson Brown, I, A. C. Bates, agree to lend to J. C. Dunn the sum of forty-two hundred dollars in such sums and at such times as I can spare the money, but all of the above amount shall be paid in on or before four years from this date, April 13, 1886. Interest to be paid on all sums paid in from date, except eight hundred dollars this day paid in. No interest on this until the forty-two hundred has all been paid in. The interest paid to A. C. Bates during the life of Mrs. Nelson Brown, at her death all

the money above mentioned is to be paid to the executor of Nelson Brown's estate.

(Signed)     Amos C. Bates, Executor."

The evidence further tended to show that this proposition was accepted by Dunn, and that, under it, he signed the bond and Bates paid to him various sums of money.

If the notes of Bates & Son were assets of the estate of Brown, on the decease of Mrs. Brown, Bates, as executor, would be held accountable for them; and if any loss came to the estate by reason of his failure to collect them, when by reasonable attention and diligence he might have done so, his bondsmen would be holden for his neglect. Bates being the exector of the estate, as such he could contract for the payment of money to the executor of the estate, provided he contracted with reference to his own assets or those of the estate. He could, in view of his liability for the payment of the notes and the duty he was under as executor to account for them, pay his own money to Dunn and stipulate for its payment by Dunn to the executor of the estate, on the decease of Mrs. Brown; and Dunn, by contract with Bates as executor, could bind himself to thus receive and pay over the money, and thereby secure indemnity for the liability he was assuming by signing Bates' bond. The evidence tended to show that the contract was made with reference to such liability on the part of Bates and the sureties upon his bond. From the facts and circumstances disclosed by the evidence, the jury might have properly found, if the case had been submitted to them, that the contract was entered into and payments made under a mutual belief that the notes belonged to the estate, and that the sureties upon Bates' bond would be holden for any shortage of duty on his part respecting them; that the contract was concluded and payments made with reference to such ownership and liability; that

Bates paid the money to Dunn in consideration of Dunn's promise to pay it to the executor of the estate, on the decease of Mrs. Brown; that Bates, in doing this, was providing for the payment of notes that were held by him as executor, and placing himself in a situation to properly account for them; and that Dunn promised Bates, as executor of the estate, that he would pay over to the executor of Brown's estate, on the decease of Mrs. Brown, all sums of money that should be paid to him by Bates under the contract. If the parties contracted with reference to the notes being assets of the estate and Bates' liability to account for them as executor, or his liability as one of the makers for their payment, then, for the purpose of determining the liability of Dunn's estate to Bates, as executor, the question whether the notes belonged to the estate of Brown or to Mrs. Brown, and whether the money paid by Bates to Dunn was an asset of Brown's estate, while in the hands of Bates and before it was paid to Dunn, were immaterial; and the claim could be presented to, and allowed by, the commissioners in the name of Bates, as executor of Brown's estate. *Davenport* v. *Mutual Life Association*, 47 Vt. 528; *Clark* v. *Employers' Liability Assurance Co.*, 72 Vt. 464; *Phelps* v. *Conant*, 30 Vt. 277; *Bank* v. *Burton*, 58 Vt. 426; *Rutland & Burlington R. R. Co.* v. *Cole*, 24 Vt. 33; *Pangborn* v. *Saxton*, 11 Vt. 79; *McPeck* v. *Moore*, 51 Vt. 269; 15 Ency. Pl. & Pr. 509.

The evidence also tended to show an absolute debt in favor of the claimant, provable before the commissioners under V. S. 2428, which provides, in part, for the allowance by commissioners of demands payable at a future day at their present value, and that, notwithstanding such allowance, the executor or administrator may pay the debt according to the terms and at the time specified in the contract. Dunn's undertaking, if any, was to pay at the decease of Mrs. Brown, an event which

was sure to occur sooner or later. This was an absolute under-taking to pay. His liability was not made to depend upon some future event which might or might not happen. The fact that the time of payment is uncertain does not make a claim contingent, when, as in this case, the time of payment is sure to arrive at some future day. A contingent claim, within the meaning of V. S. 2517, is one that cannot be proved as a debt before the commissioners, or allowed by them, because the liability is dependent upon some future event which may or may not happen, and therefore cannot be determined within the time allowed for proving claims before the commissioners. *Sargent* v. *Kimball,* 37 Vt. 321; *Curley* v. *Hand's Estate,* 53 Vt. 524.

It does not appear that the question of variance between the declaration and the evidence was raised in, and passed upon by, the Court below, nor does it appear that such variance is material and substantial, affecting the right of the matter; therefore, the question cannot be considered by this Court. V. S. 1630; *Bank* v. *Burton,* 58 Vt. 426; *Shanks v. Whitney,* 66 Vt. 405; *Dano* v. *Sessions,* 65 Vt. 79.

*Judgment reversed and cause remanded.*